NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6077
     Facsimile: (213) 894-7631
     E-mail:    ruth.pinnkel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. MJ 20-1777 |
|---|---|
| Plaintiff, | GOVERNMENT'S **OPPOSED** MOTION TO EXTEND AND/OR EXCLUDE TIME FROM THE SPEEDY TRIAL ACT'S INDICTMENT AND TRIAL CLOCKS BASED ON SUSPENSION OF THE GRAND JURY AS TO DEFENDANT BABAK BROUMAND; PROPOSED ORDER |
| v. | |
| BABAK BROUMAND, | |
| Defendant. | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Ruth C. Pinkel, moves for an order extending and excluding time from the Speedy Trial Act's indictment and trial clocks until June 1, 2020. Specifically, in light of the COVID-19 pandemic and the Central District of California's suspension of grand-jury proceedings until June 1, 2020, the government requests an order extending and/or excluding time from the 30-day period under 18 U.S.C. § 3161(b) in which an indictment or information must be returned.

Defendant opposes this request.  If grand-jury proceedings remain suspended past June 1, 2020, the government will move for further relief.

## I. FACTUAL AND LEGAL BACKGROUND

### A. Defendant's Arrest and Initial Appearance

This case was by complaint and arrest warrant, issued April 21, 2020, by Magistrate Judge Gail J. Standish.  Defendant was arrested April 24, 2020, in the Northern District of California, made his initial appearance in that district April 27, 2020, and was detained.  Defendant was released on May 1, 2020, pending his posting of a $400,000 secured bond.  Following transfer of the case or removal of the defendant from the Northern District under the Federal Rules of Criminal Procedure, defendant first appeared before a judicial officer of this Court on May 18, 2020; defendant was continued on bond, with modification.  A preliminary hearing was held, probable cause found, and June 23, 2020 post-indictment arraignment set.

### B. COVID-19 and the Central District of California's Response

On March 31, 2020, in response to the continuing spread of the COVID-19 pandemic, this Court suspended all grand-jury proceedings until at least May 4, 2020, "pending further order of the Court." C.D. Cal. Order of the Chief Judge No. 20-044, In Re: Coronavirus Public Emergency, Suspension of Grand Juries, at 3 (Mar. 31, 2020). By subsequent order, the Court continued this suspension through June 1, 2020.  C.D. Cal. General Order No. 20-05, In Re: Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings, at 3 ¶ 7 (Apr. 13, 2020).  The last grand jury session in the Central District of California was on March 25, 2020.

This suspension followed a series of prior orders responding to the COVID-19 crisis.  On March 13, 2020, following the President's declaration of a national emergency, the Court suspended jury selection and jury trials scheduled to begin before April 13, 2020. C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020).  The same day, the Court imposed health- and travel-related limitations on access to Court facilities.  C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (Mar. 13, 2020).  On March 19, 2020, by Order of the Chief Judge, the Court instituted its Continuity of Operations Plan ("COOP"), closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions.  C.D. Cal. Order of the Chief Judge No. 20-042, In Re: Coronavirus Public Emergency, Activation of Continuity of Operations Plan (Mar. 19, 2020).  On March 29 and 31, recognizing COVID-19's continued spread in the community, the Court took further action: implementing video-teleconference and telephonic hearings and--as noted above--suspending all grand-jury proceedings until May 4, 2020.  C.D. Cal. Order of the Chief Judge No. 20-043, In Re: Coronavirus Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings (Mar. 29, 2020); Order of the Chief Judge No. 20-044.  The Court has since extended these orders through June 1, 2020.  See General Order No. 20-05.

These orders were imposed based on (1) the California governor's declaration of a public-health emergency in response to the spread of COVID-19, as well as (2) the Centers for Disease

Control's advice regarding reducing the possibility of exposure to the virus and slowing the spread of the disease. See General Order 20-02, at 1. The Chief Judge has recognized that, for at least eight weeks, all gatherings should be limited to no more than 10 people; elderly, and other vulnerable people should avoid person-to-person contact altogether. See Order of the Chief Judge No. 20-042, at 1-2.

The Judicial Council of the Ninth Circuit has since declared an emergency in the Central District of California, pursuant to 18 U.S.C. § 3174. Order, In re Approval of the Judicial Emergency Declared in the Central District of California (9th Cir. Judicial Council Apr. 9, 2020), available at https://cdn.ca9.uscourts.gov/datastore/opinions/2020/04/10/JC%20Order%20and%20Report%20re%20Judicial%20Emergency%20in%20CA-C.pdf. In the supporting report, the Judicial Council recognized that "under the emergency declarations of national, state, and local governments, as well as recommendations from the Centers for Disease Control and Prevention to convene groups of no more than 10 people, the Court is unable to obtain an adequate spectrum of . . . grand jurors." Id. (Report at 1).

On March 19, 2020, both Los Angeles Mayor Eric Garcetti and California Governor Gavin Newsom issued emergency orders requiring residents to "stay home," subject to limited exceptions. California Executive Order N-33-20 (Mar. 19, 2020); accord Safer at Home, Public Order Under City of Los Angeles Emergency Authority ¶ 1 (Mar. 19, 2020). All schools in the Los Angeles Unified School District are closed through the summer of 2020.

4

As these orders and protocols reflect, the COVID-19 pandemic is a global emergency that is unprecedented in modern history. The virus is spreading through the United States community at an alarming rate. See Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Coronavirus Disease 2019 (COVID-19), California Department of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx. The death toll, across the world, is staggering.

### C. The Speedy Trial Act

A defendant's arrest triggers two different clocks under the Speedy Trial Act. First, under 18 U.S.C. § 3161(b) (the "speedy-indictment clock"), an indictment must usually be returned within 30 days of a federal arrest or service of a summons based on a complaint. Second, an additional requirement applies to a defendant who is "being held in detention solely because he is awaiting trial" or who is "released" but "designated by the attorney for the government as being 'high risk.'" 18 U.S.C. § 3164(c) (the "90-day trial clock"). For such defendants, trial "shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the [g]overnment." Id. Failure to do so shall result in release from custody or "automatic review . . . of the conditions of release." Id.

Here, these provisions would typically require defendant to be indicted by May 24, 2020. Exceptions to these rules apply, however, and periods can be excluded under 18 U.S.C. § 3161(h)--the same,

5

familiar provision that applies to the Speedy Trial Act's 70-day trial clock.

### 1. 18 U.S.C. § 3161(h)(1)(E) excludes time period relating to the transfer of the case or removal of the defendant from another district

Under 18 U.S.C. § 3161(h)(1)(E), delay is excludable resulting from any proceeding relating to the transfer of the case or removal of any defendant from another district under the Federal Rules of Criminal Procedure.

### 2. 18 U.S.C. § 3161(b) extends the speedy-indictment clock to 60 days if no grand jury is in session

Under 18 U.S.C. § 3161(b), the speedy-indictment clock automatically extends to 60 days if no grand jury is in session during the 30 days following a defendant's arrest or service with a summons. Specifically: "If an individual has been charged with a felony in a district in which no grand jury has been in session" during the "thirty days from the date on which such individual was arrested or served with a summons," then "the period of time for filing the indictment shall be extended" from 30 to 60 days. Id.

This provision applies to grand juries that have been suspended--that is, juries which remain empaneled but do not sit anywhere in the district for 30 days. The Supreme Court has referred to a grand jury being "not in session" to refer to the grand jury's "schedule," not its empanelment. Jaben v. United States, 381 U.S. 214, 219 (1964); United States v. Towill, 548 F.2d 1363, 1367 (9th Cir. 1977) ("A close reading of Jaben convinces us that the Court meant to equate 'session' with the current 'grand jury schedule,' not with the theoretical possibility of summoning a grand jury on short notice."). "In session," under Federal Rule of

6

Criminal Procedure 6(d)(1), similarly refers to a particular meeting of the grand jury; thus the Rule describes the "persons who may be present while the grand jury is in session[.]"  Id.

> 3. 18 U.S.C. § 3161(h)(7)(A) allows exclusion of time from the Speedy Trial Act--including the speedy-indictment and 90-day trial clocks--to serve the ends of justice

In addition, pandemic justifies excluding time from the Speedy Trial Act, including the speedy-indictment and 90-day trial clocks, under 18 U.S.C. § 3161(h)(7)(A).  See generally United States v. Ramirez-Cortez, 213 F.3d 1149, 1153-54 (9th Cir. 2000); United States v. Murray, 771 F.2d 1324, 1327 (9th Cir. 1985) (per curiam); United States v. Pollock, 726 F.2d 1456, 1461 (9th Cir. 1984).

This is the same ends-of-justice provision that applies to the 70-day post-indictment trial clock under the Speedy Trial Act.  It excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted the continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest in the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

The provision has strict procedural requirements.  Zedner v. United States, 547 U.S. 489, 507, 509 (2006).  A court must (1) grant a continuance only for a "specific period of time," and (2) make "findings in the record" that address "specific underlying factual circumstances" anchored to enumerated statutory factors.  Pollock, 726 F.2d at 1461; United States v. Perez-Reveles, 715 F.2d 1348, 1351-52 (9th Cir. 1983); see 18 U.S.C. § 3161(h)(7)(B) (listing factors).  "[N]o continuance period may be excluded unless the court makes reasonably explicit findings that demonstrate that

7

the ends of justice served by granting the continuance do, in fact, outweigh the best interests of the public and the defendant in a speedy trial." Perez-Reveles, 715 F.2d at 1352.

Nevertheless, once procedural requirements are satisfied, the provision gives courts broad "discretion to deal with otherwise unavoidable delays in the indictment . . . process." Pollock, 726 F.2d at 1461; see United States v. Murillo, 288 F.3d 1126, 1133 (9th Cir. 2002) (ends-of-justice findings reviewed for clear error); Murray, 771 F.2d at 1327 (same).

**II.   REQUEST FOR SPEEDY-TRIAL ACT EXTENSION, EXCLUSION, AND FINDINGS**

Here, the time between April 24, 2020, the date of defendant's arrest, and June 1, 2020, should be excluded from the Speedy Trial Act for all purposes, thus tolling both the speedy-indictment and 90-day trial clocks.

First, if all Central District of California grand juries remain suspended for the entire 30 days following defendant's arrest, then the speedy-indictment clock extends to 60 days. 18 U.S.C. § 3161(b). This provision applies automatically; "[n]o government motion is required." United States v. Mann, 701 F.3d 274, 285 (8th Cir. 2012). However, as a matter of caution, the government requests that the Court find that § 3161(b)'s 30-day extension applies because no grand jury in the Central District of California sat before May 24, 2020.

Second, all Speedy Trial Act deadlines--including both the speedy indictment and 90-day trial clock--should be tolled until June 1, 2020, under the ends-of-justice provision. See 18 U.S.C. § 3161(h)(7)(A). Pending further order of the Chief Judge, grand

juries have been suspended until that date.  C.D. Cal. General Order 20-05, at 3 ¶ 7.

The ends of justice amply justify excludable time under these circumstances.  As the President, the California governor, the Los Angeles mayor, and this Court's General Orders have recognized, we are in the midst of a grave public-health emergency requiring people to take extreme measures to limit contact with one another.  This pandemic, like a natural disaster or other emergency, well justifies an ends-of-justice exclusion.

"Although the drafters of the Speedy Trial Act did not provide a particular exclusion of time for such public emergencies (no doubt failing to contemplate, in the more innocent days of 1974, that emergencies such as this would ever occur), the discretionary interests-of-justice exclusion" certainly covers this situation. United States v. Correa, 182 F. Supp. 326, 329 (S.D.N.Y. 2001) (addressing Speedy Trial Act exclusion in the wake of the September 11 terrorist attacks).  Thus, Courts of Appeals across the country have affirmed Speedy Trial Act exclusions under emergent circumstances: after the eruption of Mt. St. Helens, see Furlow v. United States, 644 F.2d 764, 767-69 (9th Cir. 1981); after a prosecutor had a "family emergency," United States v. Stallings, 701 F. App'x 161, 170-71 (3d Cir. 2017); where a case agent had a "catastrophic family medical emergency," United States v. Hale, 685 F.3d 522, 533-36 (5th Cir. 2012); after Hurricane Katrina, United States v. Scott, 245 F. App'x 391, 394 (5th Cir. 2007); or even after a "paralyzing blizzard" and the hospitalization of an informant, United States v. Richman, 600 F.2d 286, 292, 293-94 (1st Cir. 1979).

With respect to the speedy-indictment date, the pandemic falls under 18 U.S.C. § 3161(h)(7)(B)(iii), which allows a court excluding time to consider "[w]hether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b)[.]" 18 U.S.C. § 3161(h)(7)(B)(iii). This Court's order suspending grand-jury proceedings makes indictment of this case before June 1, 2020, not just "unreasonable to expect" but impossible. Id. As the order recognizes, public health compels that suspension. See C.D. Cal. Order of the Chief Judge No. 20-044, at 1-2; C.D. Cal. General Order No. 20-05, at 3 ¶ 7. However, the order likewise reflects that, because the ends-of-justice exclusion is available under 18 U.S.C. § 3161(h)(7)(A), "an order suspending and continuing grand juries will not prejudice matters for which a complaint has issued but a grand jury has not had the opportunity to determine whether to return an indictment." Id. at 2. Similarly, a prior general order found that the "ends of justice served by" extending Speedy Trial Act deadlines "outweigh[ed] the interests of the parties and the public," and thus § 3161(h)(7)(A) applies. General Order No. 20-02, at 2 ¶ 4.

Similarly, with respect to the 90-day trial clock, COVID-19 may make trial within the Speedy Trial Act's deadlines impossible. See id. (suspending all jury trials until at least April 13, 2020); General Order No. 20-05, at 2 ¶ 2 (continuing suspension through June 1, 2020). Thus, failure to grant the continuance would likely make a continuation of the proceeding impossible or result in a miscarriage of justice. 18 U.S.C. § 3161(h)(7)(B)(i). In addition

10

to concerns for prospective jurors' health and the ability of the Court to obtain (and maintain) an adequate number of jurors, an ends-of-justice exclusion from the 90-day trial date is particularly apt because:

- The closure of Los Angeles's public schools (through at least summer 2020), will require a significant number of jurors to handle child-care responsibilities and thus be unavailable for jury service.
- It will be almost impossible for jurors--particularly jurors over 65--to maintain adequate social distance during jury selection, trial, and deliberations. Indeed, to leave their homes to come to court, such jurors would violate the recommendations of the Centers for Disease Control and other public-health authorities.
- The trial will involve witnesses and counsel with high-risk factors, who would endanger themselves by attending court during this pandemic. Specifically defendant states he has health issues.
- This trial will involve witnesses and counsel who must travel, and thus would put themselves and others at risk if they were to come to court during this crisis. Multiple public agencies have recommended against unnecessary travel, particularly for vulnerable populations. Specifically, defendant and his counsel will travel here from the Northern District of California.
- Counsel, United States Attorney's Office personnel, and victim-witness specialists have been encouraged to

11

telework to minimize personal contact to the greatest extent possible.  Trial preparation necessarily involves close contact with witnesses, inconsistent with advice from the Centers for Disease Control.

Due to the restrictions imposed by current public-health concerns, it is also unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the Speedy Trial Act's time limits.  Thus, denial of a continuance is likely to deny all counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.  18 U.S.C. § 3161(h)(7)(B)(iv).

Based on the foregoing, the Court should enter an order (1) finding that the Speedy Trial Act's indictment clock is extended to 60 days because no grand jury in the Central District of California sat before May 24, 2020, 18 U.S.C. § 3161(b), and (2) making case-specific findings excluding time from the Speedy Trial Act's indictment and 90-day trial clocks under 18 U.S.C. § 3161(h)(7)(A).  The Court should also find that the period from defendant's April 24, 2020, arrest in the Northern District, to his May 18, 2020 initial appearance in this district, is excludable time relating to the transfer of the case or removal of the defendant from the Northern District of California under the Fed. Rules of Crim. Pro.  See 18 U.S.C. § 3161(h)(1)(E).  Nothing in the Court's

//

//

order should preclude a finding that other provisions of the Speedy Trial Act dictate that other time periods are excluded.

Dated: May 26, 2020                       Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


          /s/ *RUTH C. PINKEL*
RUTH C. PINKEL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA